# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.

CHILDREN'S HOSPITAL COLORADO,

Plaintiff,

v.

UNITED STATES DEPARTMENT OF DEFENSE, and

LLOYD AUSTIN III, in his official capacity as Secretary
of Defense, United States Department of Defense,

Defendants.

---

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

---

Plaintiff, Children's Hospital Colorado ("**Children's Colorado**"), by and through its

attorneys, Polsinelli PC, for its Complaint for Declaratory and Injunctive Relief ("**Complaint**")

against the above-listed Defendants, alleges as follows:

## INTRODUCTION

1.      This is an action under the Administrative Procedure Act ("**APA**"), 5 U.S.C. §§

701 *et seq.*, seeking declaratory and injunctive relief to halt the implementation of portions of a

final rule regarding TRICARE reimbursement to children's hospitals issued by the United States

Department of Defense ("**DoD**") in clear violation of its statutory authority.[1]

---

[1] TRICARE, previously known as the Civilian Health and Medical Program of the Uniformed Services
("**CHAMPUS**"), was promulgated under 10 U.S.C. §§ 1071, *et seq.*, and provides a comprehensive managed health
care program for the delivery and financing of health care services for uniformed service members, retirees, and their
dependents. 32 C.F.R. § 199.17(a).  The Secretary of Defense is generally responsible for administering TRICARE.
10 U.S.C. § 1073(a)(2).  The TRICARE program rules include 32 C.F.R. Part 199, and are authorized by 10 U.S.C.
§§ 1079, 1086, 1075 (TRICARE Select), 1075a (TRICARE Prime cost sharing), 1095f (referrals and pre-
authorizations under TRICARE Prime), 1099 (health care enrollment system), 1097 (contracts for medical care for
retirees, dependents and survivors: alternative delivery of health care), and 1096 (resource sharing agreements).

2.      The rule, entitled "TRICARE; Reimbursement of Ambulatory Surgery Centers and Outpatient Services Provided in Cancer and Children's Hospitals," 88 Fed. Reg. 19,844 (Apr. 4, 2023) (the "**2023 Final Rule**"), purports to implement provisions of the National Defense Authorization Act of Fiscal Year 2002, Pub. Law 107-107 (Dec. 28, 2001) ("**FY02 NDAA**") and becomes effective on October 1, 2023.[2]

3.      The FY02 NDAA provision relevant to this action instructs the DoD to issue regulations to determine TRICARE payments "***to the extent practicable***" in accordance with the ***"same reimbursement rules"*** as apply to ***"providers of services of the same type"*** under Medicare. 10 U.S.C. § 1079(i)(2) (emphasis added).  Medicare is the Federal government's health insurance program for the aged and disabled codified in the Social Security Act at Title II: "Federal Old-Age, Survivors, and Disability Benefits" ("**Medicare**").[3] 42 U.S.C. § 426.

4.      But the DoD failed to meet any of these statutory requirements.  The 2023 Final Rule does not propose to apply the "same reimbursement rules" that Medicare would apply to providers "of the same type"—children's hospitals.[4]  Indeed, the DoD has developed an entirely new reimbursement model—separate from that which was set by Medicare—without any additional direction from Congress.  The DoD also ignores how its rule is completely impracticable as applied to children's hospitals. This is in violation of DoD's statutory authority and the APA's reasoned decision-making requirement.

5.      The DoD has not only violated the APA by acting outside of its statutory authority

---

[2] While the 2023 Final Rule applies to ambulatory surgery centers, cancer hospitals, and children's hospitals, this action concerns only the application of the rule to children's hospitals.

[3] Most Americans become entitled to Medicare eligibility when they reach the age of 65.  The Medicare program was designed to serve seniors and includes many important design elements to serve the special health needs of Americans over the age of 65.  *See, e.g.*, 42 U.S.C. §§ 1395c, *et seq.*

[4] Medicare defines a "children's hospital" as a hospital engaged in furnishing services to inpatients who are predominantly individuals under the age of 18.  42 U.S.C. § 1395ww(d)(1)(B)(iii); 42 C.F.R. § 412.23(d).

as stated in the FY02 NDAA, but the DoD's rulemaking process also does not satisfy the reasoned decision-making requirements of the APA. The DoD failed to reasonably consider the outsized financial impact on children's hospitals, failed to respond to serious issues raised by commenters, offered contradictory statements without explanations of its decisions, and offered an explanation of its change in the 2023 Final Rule that ran counter to the evidence before it.

6.      Furthermore, absent the relief requested in this action, Children's Colorado will suffer irreparable harm by being forced to commence programmatic cuts that will dismantle years of work that has gone into building pediatric departments, centers, and service lines required to furnish specialty care for seriously ill children, particularly at its Colorado Springs hospital ("**Children's Colorado Springs**").  Colorado Springs is the home of tens of thousands of children covered by TRICARE and the impact of the 2023 Final Rule will harm Children's Colorado's ability to serve those children.

7.      Accordingly, the Court should vacate, as contrary to law, in excess of statutory authority, and arbitrary and capricious, the portions of the 2023 Final Rule relating to children's hospitals.

[REMAINDER OF PAGE INTENTIONALLY BLANK]

## <u>TABLE OF CONTENTS</u>

PARTIES ............................................................................................................. 5

FACTS ................................................................................................................ 6

    A.   Children's Colorado is Vital to Colorado's Communities ................................. 6

    B.   Congress Enacts The National Defense Authorization Act of Fiscal Year 2002 ............. 7

    C.   DoD Initiates Official Rulemaking ................................................................. 8

        (i) The Medicare OPPS is Designed for Medicare Beneficiaries, Not for Children ............... 8

        (ii) DoD Has Acknowledged That Medicare OPPS is Impracticable for Pediatric Care ...... 10

        (iii) DoD Determines Children's Hospitals Should be Exempt from OPPS ........................ 12

    D.   The 2019 Proposed Rule Dramatically Changed Course ................................. 13

    E.   The DoD Does Not Respond to Significant Problems Raised in the Comments ............. 14

    F.   The 2023 Final Rule Exceeds the DoD's Statutory Authority ......................... 15

    G.   Children's Colorado Will Suffer Irreparable Harm Under The 2023 Final Rule ............. 19

COUNT 1: The Challenged Provisions are in Excess of Statutory Authority and Not in Accordance with Law (5 U.S.C § 706) ................................................................. 23

COUNT 2: The Challenged Provisions Are Arbitrary and Capricious (5 U.S.C. §§ 553, 706) ... 24

PRAYER FOR RELIEF ......................................................................................... 26

## PARTIES

8.      Plaintiff, Children's Colorado, is a nonprofit corporation organized under the laws of the State of Colorado.  It operates children's hospitals and specialty pediatric outpatient locations in Colorado, including Children's Hospital Colorado at Anschutz ("**Children's Anschutz**") and Children's Colorado Springs, and provides pediatric services to thousands of patients, including dependents of active duty and retired service members, and other TRICARE-eligible children, throughout Colorado.  Children's Colorado has over 3,000 clinical pediatric specialists and over 5,000 full-time employees.  Overall, Children's Colorado has 15 facilities located throughout Colorado that provide a wide range of specialty pediatric services.

9.      Defendant, United States Department of Defense, is an executive department of the United States headquartered in Washington, D.C.

10.      Defendant, Lloyd Austin III, sued in his official capacity only, is the Secretary of Defense of the DoD ("**Secretary**").

## JURISDICTION AND VENUE

11.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under federal statutes and regulations.  This Court also has jurisdiction over this action by virtue of the APA's waiver of sovereign immunity, 5 U.S.C. §§ 701 *et seq.*  Children's Colorado is entitled to the requested declaratory and injunctive relief under the APA and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202.

12.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) because this is an action against officers and agencies of the United States, Children's Colorado resides in this district, and no real property is involved in this action.

## FACTS

**A.      Children's Colorado is Vital to Colorado's Communities**

13.      Children's Colorado serves an essential function.  It ensures that children in military-connected families, including children with medical complexity who are covered by TRICARE, have access to specialty pediatric health care services in Colorado. Military families face unique stressors—deployment, reintegration, frequent relocation, and life in remote locations, among others—which can impact their overall health and well-being. Children covered by TRICARE are more likely to have special health care needs and to have behavioral health diagnoses compared to children with other insurance types.  Roopa Seshadri, *et al.*, *Families with TRICARE Report Lower Health Care Quality and Access Compared to Other Insured and Uninsured Families*, HEALTH AFFAIRS, Aug. 5, 2019, https://www.healthaffairs.org/doi/10.1377/hlthaff.2019.00274 (last visited Sept. 29, 2023).  These children rely on the highly specialized pediatric care that can only be found at children's hospitals like Children's Colorado.

14.      Children's Colorado is a nationally ranked nonprofit, children's health care system that strives to improve the health of children through the provision of high-quality, coordinated programs of patient care, education, research, and advocacy.

15.      Children's Colorado has a longstanding history of serving military families in the communities in which it operates, including Aurora and Colorado Springs. Aurora is home to Buckley Space Force Base (formerly, Buckley Air Force Base), while Colorado Springs boasts a vibrant defense community with over 100,000 military families, including active, reserve, guard, and veterans.

16.      An estimated 38,000 uniformed military, 12,000 DoD civilians, and 100,000 veterans reside within Colorado Springs and Colorado's 5th Congressional District.  The largest

base in Colorado, Fort Carson, U.S. Army, is in Colorado Springs and has over 57,000 military personnel, including military dependents (i.e., children and spouses of military personnel). Other military institutions within the municipality include the U.S. Air Force Academy, Cheyenne Mountain Air Force Base, Peterson Air Force Base, and Schriever Air Force Base. Colorado Springs is the permanent home of U.S. Space Command.

17.     More than 16,000 children insured by TRICARE receive care at Children's Colorado annually, including approximately 9,500 patients at Children's Colorado Springs, and 7,000 patients at Children's Anschutz.

18.     Military installations near Children's Colorado Springs have been designated by TRICARE as Exceptional Family Member Program ("**EFMP**") hubs, specifically because of the specialized pediatric services that Children's Colorado Springs provides.  This means that military families who have a child with complex medical or mental health needs or serious illnesses or injuries may be preferentially stationed in Southern Colorado in order to access the specialized services of Children's Colorado Springs.

19.     EFMP designations of military installations in Southern Colorado are tied to Children's Colorado Springs's practice expansion of its outpatient specialty care programs over five years and Children's Colorado's commitment to build the Children's Colorado Springs hospital location.  About 20% of all patients at Children's Colorado Springs are TRICARE beneficiaries.

20.     Military families stationed at installations in Southern Colorado rely on Children's Colorado for an entire spectrum of pediatric specialty care delivered through services such as outpatient surgeries, mental health therapy, and childhood cancer treatment.

**B.     Congress Enacts The National Defense Authorization Act of Fiscal Year 2002**

21.     Under the FY02 NDAA, among other requirements for services furnished under

the TRICARE program, Congress set forth requirements for the reimbursement of health care facilities and providers for health care services furnished to TRICARE recipients.

22. The FY02 NDAA, as amended in its current form, provides:

> The amount to be paid to a provider of services for services provided under a plan covered by this section shall be determined under joint regulations to be prescribed by the administering Secretaries which provide that the amount of such payments shall be determined *to the extent practicable* in accordance with *the same reimbursement rules* as apply to payments *to providers of services of the same type* under title XVIII of the Social Security Act (42 U.S.C. 1395 et seq.) [Medicare].

10 U.S.C. § 1079(i)(2) (emphasis added).

23. In other words, FY02 NDAA directed the Secretary to establish by rule the amount of the payments for services furnished to TRICARE recipients pursuant to the *same reimbursement rules* that would apply to *that provider type* under *Medicare*, but, crucially, Congress conditioned this upon a determination that it was "*practicable*" to do so. *Id.*

## C. DoD Initiates Official Rulemaking

24. On June 13, 2002, the DoD issued an interim final rule responding to the FY02 NDAA, entitled "TRICARE; Sub-Acute Care Program; Uniform Skilled Nursing Facility Benefit; Home Health Care Benefit; Adopting Medicare Payment Methods for Skilled Nursing Facilities and Home Health Care Providers," 67 Fed. Reg. 40,597 (June 13, 2002) ("**2002 IFR**"). This interim final rule recognized that Medicare was phasing in a new Outpatient Prospective Payment System ("**OPPS**"). 67 Fed. Reg. 40,601.

### (i) The Medicare OPPS is Designed for Medicare Beneficiaries, Not for Children

25. The Medicare OPPS[5] is a complicated reimbursement methodology, not a straightforward fee-for-service payment system. *See generally*, "Office of Inspector General;

---

[5] 42 U.S.C. § 1395l(t).

Medicare Program; Prospective Payment System for Hospital Outpatient Services," 65 Fed. Reg. 18,434 (Apr. 7, 2000). The Medicare OPPS created a payment methodology whereby many items and services furnished in the hospital outpatient department are reimbursed based on an "ambulatory payment classification" ("**APC**"). *See, e.g.*, 42 C.F.R. § 419.31. The hospital submits a Healthcare Common Procedure Coding System ("**HCPCS**") code for each service. Medicare then groups services, identified by their HCPCS codes and descriptors, within APC groups, with the groups determining the payment rates under the OPPS. *Id.* at § 419.2. APC groups are organized so that the services within each group are similar clinically and in terms of resource utilization. *See* 65 Fed. Reg. 18,434, 18,446. The APC rate is then adjusted based on many criteria, such as geographic and wage factors, the complexity of the services, site neutrality, use of new technologies, high-cost outliers, quality measures, and certain hold harmless payments.[6] *See* 42 C.F.R. § 419.32. An APC payment covers all related services furnished by the outpatient department on the same day. Hospitals may receive several different APC payments for services furnished to a patient on a single day. *See* Medicare Claims Processing Manual, Ch. 4, § 10.2.

26. Crucially, the Medicare OPPS includes components that make TRICARE's application to children's hospitals wholly impracticable based on the very nature of pediatric care. For example, under the Medicare OPPS, hospitals are required to submit data on different issue-specific quality metrics, and if they fail to do so, they are subject to a 2% payment reduction. 42 U.S.C. § 1395l(t)(17); 42 C.F.R. § 419.46(a). Many of the currently required quality measures, however, simply do not apply to pediatric patients (for example, metrics related to treatment of acute myocardial infarction, MRIs of the lumbar spine for lower back pain, and 7-day hospital visit

---

[6] Many of the provisions of the Medicare OPPS are updated annually.

9

rate post-colonoscopy).[7]

27.     Further, when Medicare transitioned to the OPPS, all hospitals were eligible for additional transitional outpatient payments ("**TOPs**"), paid monthly, to limit the difference between the OPPS and pre-OPPS reimbursement levels.  42 U.S.C. § 1395l(t)(7); 42 C.F.R. § 419.70(d)(3); *see also* 73 Fed. Reg. 74,945, 74,949 (Dec. 10, 2008) (the purpose of this additional payment was to ensure that hospitals are "pa[id] for services at the ***full amount that would have been allowed prior to implementation of the OPPS***.") (emphasis added).

28.     Congress continued to recognize the challenges of applying the Medicare OPPS reimbursement methodology to pediatric care, particularly considering the rarity with which Medicare covers and pays for services furnished to a child in a children's hospital.[8] Consequently, Medicare chose to make this additional monthly payment permanent, characterizing it as a "hold harmless" payment to ensure implementation of Medicare OPPS would not result in reimbursement cuts to children's hospitals. 42 U.S.C. § 1395l(t)(7)(D)(ii).

**(ii)     DoD Has Acknowledged That Medicare OPPS is Impracticable for Pediatric Care**

29.     When the DoD considered Congress's directive to utilize Medicare reimbursement rules for TRICARE ***to the extent practicable***, the DoD determined that doing so was ***not practicable*** for children's hospitals.

30.     In the 2002 IFR, the DoD stated it:

plan[ned] to follow the Medicare approach. However, because of complexities of the Medicare transition process and the lack of TRICARE cost report data comparable to Medicare's, it is not practicable for the Department to adopt

---

[7] Children's Colorado assumes, based on the lack of discussion from the DoD in rulemaking, that they will not implement the Medicare OPPS Quality Reporting requirements for children's hospitals even though it would be required for implementation for the actual Medicare OPPS.

[8] One of the situations in which a pediatric patient may qualify for Medicare is that individuals with End Stage Renal Disease are eligible for Medicare benefits upon confirmation of their condition without regard to age.  42 U.S.C. § 426-l.

Medicare OPPS for hospital outpatient services at this time.

67 Fed. Reg. 40,597, 40,601.

31.     The 2002 IFR included no discussion of payment for outpatient services furnished at ***children's*** hospitals, though it noted in several places the practical limitations of applying Medicare payment analysis to services for children. *See*, *e.g.*, *id.* at 40,597 ("A second implementation issue concerns the use of [Medicare Minimum Data Set ("**MDS**")] for neonates and very young children. The MDS was not designed for very young children. As a result, we believe that children under ten should not be assessed using the MDS."); 40,601 ("As with the [Skilled Nursing Facility] MDS classification system, we believe the [Medicare Home Health Resource Groups] should not be used for children under ten. They are thus exempt from the [Home Health Agency] prospective payment system."); 40,597 ("HHAs will be reimbursed using the same methods and rates as used under the [Medicare OPPS], except for children under age ten and except as otherwise necessary to recognize distinct characteristics of TRICARE beneficiaries and as described in instructions issued by the Director, [Tricare Management Activity]."). Accordingly, even in the 2002 IFR, the DoD specifically contemplated that pediatric care was unique and that it was impracticable to apply Medicare standards to care for children. *See id.* at 40,597, 40,601 (discussing how the various Medicare tools were not meant for and would not be used for young children).

32.     Three years later, on October 24, 2005, the DoD issued another final rule ("**2005 Final Rule**"), again attempting to implement this provision of FY02 NDAA, entitled "TRICARE; Sub-Acute Care Program; Uniform Skilled Nursing Facility Benefit; Home Health Care Benefit; Adopting Medicare Payments Methods for Skilled Nursing Facilities and Home Health Care Providers," 70 Fed. Reg. 61,368 (Oct. 24, 2005).

33.     Under the 2005 Final Rule, payment for most hospital outpatient services furnished

to TRICARE recipients was to be "based on the TRICARE-allowable cost method in effect for professional providers or the CHAMPUS Maximum Allowable Charge (CMAC)." 70 Fed. Reg. 61,368, 61,371. The DoD noted that "because of complexities of the Medicare transition process and the lack of TRICARE cost report data comparable to Medicare's, it is not practicable for [DoD] to adopt Medicare OPPS for outpatient services at this time." *Id.* And, while the 2005 Final Rule still did not contemplate or discuss children's hospitals, the DoD again noted difficulties in applying Medicare concepts to pediatric care and responded to several comments in this vein. *See*, *e.g.*, *id.* at 61,370 (rejecting the application of MDS to neonates).

### (iii)   DoD Determines Children's Hospitals Should be Exempt from OPPS

34.     On December 10, 2008, the DoD issued another final rule implementing the FY02 NDAA, entitled "TRICARE; Hospital Outpatient Prospective Payment System (OPPS)", 73 Fed. Reg. 74,945 (Dec. 10, 2008) ("**2008 Final Rule**"). As previewed in previous rules, the 2008 Final Rule utilized the Medicare OPPS reimbursement methodology to calculate payment for hospital outpatient services furnished to TRICARE beneficiaries in general hospitals.

35.     In the 2008 Final Rule, the DoD determined it was necessary to "totally exempt" children's hospitals from the Medicare OPPS, in recognition of "the administrative complexity of capturing the data required for payment of monthly TOP amounts." 73 Fed. Reg. 74,945, 74,948– 49. The DoD explained:

> TOPs would require a comparison of what would have been paid [i.e., billed charges and CHAMPUS Maximum Allowable Charge (CMAC) amounts] prior to implementation of the OPPS for hospital outpatient services to those amounts actually paid under the OPPS for the same services. A TOP would be allowed in addition to the OPPS amount if payment to a cancer or children's hospital was lower than the amount that would have been paid prior to implementation of the OPPS. Since transitional corridor payments were specifically designed to supplement the losses experienced under the OPPS (i.e., to pay for services at the full amount that would have been allowed prior to implementation of the OPPS), and most, if not all, outpatient services paid at billed charges or CMAC would exceed the OPPS amount, the program cannot justify the administrative

burden/expense of maintaining the hold-harmless provisions for cancer and children's hospitals. As a result, TRICARE will continue to reimburse cancer and children's hospitals on a fee-for-services basis using billed charges and CMAC rates; i.e., they will be excluded altogether from the OPPS.

*Id.*

36.     The DoD recognized children's hospitals must be "held harmless" after any change in reimbursement methodology, *i.e.* would not face a reduction in payment for services provided. The DoD recognized applying Medicare OPPS to children's hospitals would be "impracticable."

**D.     The 2019 Proposed Rule Dramatically Changed Course**

37.     On November 29, 2019, without any material change to the Medicare OPPS—and nearly twenty years after the enactment of the authorizing statute—the DoD inexplicably changed course.  The DoD issued a proposed rule, entitled "TRICARE; Reimbursement of Ambulatory Surgery Centers and Outpatient Services Provided in Cancer and Children's Hospitals," 84 Fed. Reg. 65,718 (Nov. 29, 2019) (the "**2019 Proposed Rule**").  As relevant here, the 2019 Proposed Rule sought to amend the reimbursement rules applicable to outpatient services furnished to TRICARE recipients at children's hospitals.

38.      The DoD specifically proposed to adopt a "combined OPPS and cost-reimbursement system" under which hospitals would be paid under TRICARE's existing Medicare-based OPPS and reimbursed the higher of the OPPS payment or one hundred percent of the hospital-specific costs for those same services, where the costs are based on the hospital-specific outpatient cost-to-charge ratio ("**CCR**") and paid through an annual adjustment. 84 Fed. Reg. 65,718, 65,723.

39.     The 2019 Proposed Rule does not follow the Medicare OPPS for children's hospitals, contrary to the directive of the FY02 NDAA.

40.     Additionally, the DoD proposed that children's hospitals may be eligible for

General Temporary Military Contingency Payment Adjustments ("**GTMCPA**"), at the discretion of the department, for network adequacy during military contingency operations. 84 Fed. Reg. 65,718, 65,724.  The GTMCPA methodology does not exist within Medicare.

41.     The 2019 Proposed Rule only explained that GTMCPAs "will be calculated and issued in the same manner as those that are made currently under TRICARE's OPPS," but did not provide any additional detail for children's hospitals, which have not been paid using TRICARE's OPPS.[9]  84 Fed. Reg. 65,718, 65,724.

**E.     The DoD Does Not Respond to Significant Problems Raised in the Comments**

42.     The 2019 Proposed Rule was opened for a 60-day public comment period. Children's Colorado participated in the rulemaking process by collaborating with the Children's Hospital Association and its membership to submit one comprehensive comment by the Children's Hospital Association ("**CHA**"), rather than submitting an individual comment. Exhibit A (the "**CHA Comment**").

43.     The CHA Comment noted that most children's hospitals do not have software, systems, or specialized staff trained to make computations under the Medicare OPPS, because children's hospitals receive very little Medicare reimbursement, and their commercial contracts are not tied to Medicare. *Id*.  Additionally, the CHA Comment requested more detail regarding TRICARE's reimbursement methodology and expressed concern that the DoD was not accurately

---

[9] While the 2023 Final Rule provided vague, and ultimately entirely discretionary, criteria for eligibility for GTMCPA payments, the criteria that the DoD adopted were not included in the 2019 Proposed Rule.  Rather, the full extent of DoD's explanation in the 2019 Proposed Rule was:

> Under this system, at the discretion of the Director, [Defense Health Agency], CCHs may be eligible for GTMCPAs that will ensure network adequacy during military contingency operations, in accordance with the implementing instructions issued by the Director, [Defense Health Agency]. These GTMCPAs will be calculated and issued in the same manner as those that are made currently under TRICARE's OPPS.

84 Fed. Reg. 65724.

capturing the significant financial impact that the 2019 Proposed Rule would have on children's hospitals. *Id*.

44.     Another children's hospital, Children's Hospital of The King's Daughters ("**CHKD**"), wrote individually to describe how devastating the 2019 Proposed Rule would be on children's hospitals serving significant TRICARE populations.   Exhibit B (the "**CHKD Comment**").   The CHKD Comment, like the CHA Comment, noted that the DoD was likely significantly underestimating the impact on children's hospitals.  *Id*.  CHKD also pointed out that the children's hospitals do not have the same payor mixes as general acute care hospitals—instead, children's hospitals tend to have large Medicaid volumes, and the enormous impact of the 2019 Proposed Rule combined with this payor mix would likely decrease access to care for the TRICARE patient population.  *Id*.

45.     Despite these comments, showing that TRICARE's adoption of the Medicare OPPS for children's hospitals was not "***practicable***," (10 U.S.C. § 1079(i)(2)), the DoD issued the 2023 Final Rule, which will become effective on October 1, 2023.  In the 2023 Final Rule, the DoD largely ignored the comments it received and did not respond to the CHA Comment at all.

**F.     The 2023 Final Rule Exceeds the DoD's Statutory Authority**

46.     The 2023 Final Rule and the DoD's responses to the public comments it received following the 2019 Proposed Rule demonstrate that the DoD's decision to add children's hospitals—including the children's hospitals operated by Children's Colorado—to Medicare's OPPS is an *ultra vires* action whereby the DoD is acting outside the scope of its statutory authority.

47.     Rather than follow the same Medicare OPPS methodology to hold children's hospitals harmless, the 2023 Final Rule imposes an entirely different TRICARE hold harmless payment provision. TRICARE's effort was not authorized by Congress and does not reflect any discernable evidence or analysis of its effectiveness.

48.     Medicare's reimbursement methodology holds children's hospitals harmless by paying the same amount for outpatient hospital services that Medicare paid prior to the adoption of the Medicare OPPS.  The 2023 Final Rule redefines "hold harmless" for children's hospitals in TRICARE to mean hold harmless to costs, not prior payment amount.   32 C.F.R. § 199.14(a)(6)(ii)(E)(4).  In other words, the 2023 Final Rule's "hold harmless" provision does not reflect Medicare's OPPS payment methodology or payment amount for children's hospitals. Rather, the 2023 Final Rule only permits payments up to the cost of outpatient care provided at children's hospitals to TRICARE recipients, resulting in significant cuts in payment for services furnished at many children's hospitals.

49.     Medicare's hold harmless provisions for children's hospitals, however, pay children's hospitals the amount they would have earned prior to application of the Medicare OPPS. So, had the DoD implemented the FY02 NDAA as Congress instructed, i.e., in accordance with the "***same reimbursement rules***" that apply to Medicare, children's hospitals would be entitled to significantly higher "hold harmless" payments, as they would be made whole against the difference from their prior ***payments***.

50.     Notably, costs as calculated under the cost-to-charge-ratio derived from a Medicare cost report do not cover actual costs because the Medicare cost report does not account for all of a hospital's costs, as is the case for Children's Colorado.

51.     Furthermore, the 2023 Final Rule also does not set forth TRICARE payment rules that reimburse as Medicare would in that it proposes that TRICARE issue "hold harmless" payments only on an annual basis, as opposed to a monthly basis under Medicare. 32 C.F.R. § 199.14(a)(1)(iii)(E)(4); Medicare Claims Processing Manual, Ch. 4, § 70; 88 Fed. Reg. 19,844, 19,852 ("While Medicare provides reimbursement through TOPs for the difference between OPPS

and hospital-specific costs on a monthly basis, we are finalizing our approach to make these payments on an annual basis.").  As a result, TRICARE will reimburse children's hospitals using its version of the Medicare OPPS payment methodology, which will result in payments that are less than the costs of the care provided and require children's hospitals to carry the debt incurred for a twelve-month period.

52.     Not only does the 2023 Final Rule deviate from Congress's directive in the FY02 NDAA's text—that TRICARE reimburse according to "***same reimbursement rules***" that apply to the ***same type of provider*** under Medicare—it also does not comply with the statutory requirement that TRICARE ***only*** use Medicare rules "***to the extent practicable***."

53.     This is most obvious when considering the alterations the 2023 Final Rule made to the Medicare OPPS payment structure for children's hospitals.  Admitting that the exact implementation of the Medicare rules was impracticable, the DoD changed the substance of Medicare payment rules and the amount of payments that would be available to children's hospitals.  88 Fed. Reg. 19,844, 19,848 (modifications are being implemented due to the "administrative burden and complexity" of the Medicare methodology).

54.     The DoD declared in its prior rulemaking that implementation of Medicare concepts to pediatric care is unworkable.  *See* 73 Fed. Reg. 74,945, 74,948–49.  Children's hospitals have higher fixed costs because children cost more to treat, and children's hospitals serve the most medically complex of children.  Children's hospitals rarely bill Medicare, and therefore do not have claims or reimbursement systems designed for Medicare claims.  Medicare has never had to meaningfully analyze compensation methodologies for children's hospitals given its lack of pediatric beneficiaries.  As a result, Medicare simply continues to pay children's hospitals using historic payment methodologies.

55.     Accordingly, by the DoD's own admission, it is not practicable to apply the *same reimbursement rules* under Medicare for children's hospital outpatient services. TRICARE's attempted addition of children's hospitals to the Medicare OPPS under the 2023 Final Rule cannot be grounded upon 10 U.S.C. § 1079(i)(2) or any other statue.

56.     The most crucial impracticability of the 2023 Final Rule, however, is shown in the disastrous impact it will have on Children's Colorado.  The purpose of the FY02 NDAA provision at issue is to "assure that medical care is available for [military] dependents."  10 U.S.C. § 1079(a). The 2023 Final Rule directly harms this goal.

57.     Children's Colorado, both at its Children's Colorado Springs and its Children's Anschutz locations, provides care to a significantly large population of TRICARE-insured military dependents—indeed Children's Colorado has built up its services to provide the best care possible to the children of military service members, and prides itself on "serving those who serve."

58.     The DoD's designation of Colorado bases as EFMP allows military families who have children with complex medical needs to be preferentially stationed in Colorado so that they may receive care at Children's Colorado.

59.     Despite Children's Colorado's commitment to serving military service members and their families, the DoD now proposes, under its 2023 Final Rule, to compensate Children's Colorado at amounts dramatically less than prior reimbursement rates. Children's Colorado has forecasted a more than $17 million reduction in Children's Colorado's TRICARE reimbursement annually as a result of the 2023 Final Rule.  The DoD has advised Children's Colorado that it will suffer more than $11 million in annual TRICARE losses.  Under the 2023 Final Rule's calculations of a total savings of $35 million, the impact to *Children's Colorado* accounts for nearly *one-third of the entire nation's reduction in TRICARE reimbursement*.

60.     Further, the 2023 Final Rule includes a separate potential payment in addition to Medicare OPPS, in the form of supplemental GTMCPA payments, which are not a function of the Medicare OPPS and do not serve as an effective substitute.  GTMCPA is entirely at the discretion of the Secretary, and the details of the process or awarded amounts were not provided in significant detail.  A children's hospital might receive up to 115% of the hospital's costs for outpatient services if it meets the following criteria: (a) ten percent or more of the hospital's revenue is from TRICARE for care of Active Duty Service Members ("ADSMs")/Active Duty Dependents ("ADDs"); (b) having 10,000 or more TRICARE visits that would fall under the OPPS payment system for ADSMs/ADDs annually; and (c) being deemed as essential for TRICARE operations. 88 Fed. Reg. 19,844, 19,853.

61.     Thus, any GTMCPA payment will be discretionary in designation and amount, based on the decision of the DoD on an annual basis.  Children's Colorado is unable to determine from its own historical data whether it will be eligible for GTMCPA, because of difficulties in identifying TRICARE beneficiaries who are Active Duty Service Members, but has been told by DoD that Children's Anschutz will not meet at least one of the criteria for GTMCPA.

62.     These elements are all contrary to the FY02 NDAA's directive that TRICARE payments "shall be determined *to the extent practicable* in accordance with *the same reimbursement rules* as apply to payments to *providers of services of the same type* under [Medicare]." 10 U.S.C. § 1079(i)(2) (emphasis added).

**G.      Children's Colorado Will Suffer Irreparable Harm Under The 2023 Final Rule**

63.     The 2023 Final Rule will cause irreparable harm to Children's Colorado, its patients, its employees, the greater Colorado community, and members of the United States Armed Forces and their children.

19

64.     Based on Children's Colorado's financial modeling, Children's Colorado Springs is projected to suffer a 42.95% reduction in TRICARE reimbursement annually, or a loss of approximately $13,000,000 annually, while Children's Anschutz is projected to suffer a 25.18% reduction in TRICARE reimbursement annually, or a loss of nearly $4,500,000 annually. Together, the Children's Colorado system would lose over $17 million, without factoring in discretionary payments contemplated by the 2023 Final Rule.

65.     As noted above, it is difficult for Children's Colorado to ascertain whether Children's Anschutz and/or Children's Colorado Springs would qualify for additional GTMCPA payments under the 2023 Final Rule.  DoD has indicated that Children's Anschutz will not meet at least one of the criteria.

66.      Regardless, even if either or both facilities qualify for and receives the maximum amount of GTMCPA additional payments, Children's Colorado Springs is still projected to suffer a 34.39% reduction in TRICARE reimbursement annually, or a loss of more than $10,000,000 annually, while Children's Anschutz is projected to suffer a 13.96% reduction in TRICARE reimbursement annually, or a loss of approximately $2,500,000 annually.

67.     Overall, implementation of the Final Rule would result in an estimated decrease of nearly $13,000,000 annually in TRICARE reimbursement across Children's Colorado's system of care, *if* Children's Colorado were to receive the ***full*** GTMCPA payments possible, which is unlikely.

68.     As noted above, this reduction in payments accounts for over a third of the $35,000,000 reduction in payments to affected hospitals overall across the entire United States estimated by the DoD under the 2023 Final Rule. *See* 88 Fed. Reg. 19844, 19,848–49.

69.     In addition to Children's Colorado's internal financial modeling, the DoD has expressed to Children's Colorado that it estimates Children's Colorado Springs alone would suffer a $9,600,000 loss in TRICARE reimbursement annually, and that Children's Anschutz would suffer a $1,800,000 million loss.  Though the DoD would not share its modeling, and its estimate substantially underestimates losses to Children's Colorado based upon Children's Colorado's own modeling, this amount would still be crippling to Children's Colorado.

70.     Furthermore, the DoD's financial modeling relied upon in the 2023 Final Rule is inaccurate by underrepresenting true hospital costs for Children's Colorado.

71.     Medicare Cost Report data, which the DoD uses for its projected financial impacts in the 2023 Final Rule, does not accurately capture Children's Colorado's total cost of operating its hospitals.

72.     Children's Colorado incurred approximately $142,000,000 in 2020 from additional hospital operating costs that could not be reported in the Medicare Cost Report.  For instance, in 2020, roughly $90,000,000 of physician costs paid by Children's Colorado and attributed to individual patient care were unallowable to report in the Medicare Cost Report.

73.     Additionally, Medicare Cost Reports limit some of Children's Colorado's costs related to research, specialty pharmacy, dental care, and community outreach, yet these are all real and necessary costs that Children's Colorado's operations must sustain, and which directly and indirectly benefit our military communities.

74.     As a result of the 2023 Final Rule's applicability to children's hospitals, and the decrease in TRICARE payments, Children's Colorado anticipates that services at Children's Colorado Springs will have to be cut.  Current services will lose sustainable funding resulting in diminished capacity and classification levels in the Neonatal Intensive Care Unit ("**NICU**"), and

the emergency department.  Children's Colorado Springs will not have adequate support for staff and equipment needed to maintain its Level II Trauma designation. The Center for Cancer & Blood Disorders at Children's Colorado Springs will have to close. The Infusion Center at Children's Colorado Springs will have to close.  Dramatic cuts in TRICARE reimbursement will result in these and other programmatic cuts diminishing the capacity of Children's Colorado to furnish care to children.  Patients seeking services at the already oversubscribed Children's Colorado Springs location will be directed elsewhere for services, including the oversubscribed Children's Anschutz, which will also face a significant loss in reimbursement under the 2023 Final Rule.

75.     There is no obvious or subtle adjustment that can be made to protect current service lines and access to care following cuts of more than $17,000,000 per year.

76.     There are a limited number of providers who can provide the type, quality, and volume of services that Children's Colorado provides.  So, it will be difficult—if not impossible— for Children's Colorado's patients to find a viable alternative children's hospital or provider within the community.  This will cause significant access to care issues for TRICARE beneficiaries across Colorado and cause patients to be redirected to providers outside of their community and/or outside of the state.  TRICARE children may experience negative health outcomes related to their inability to maintain continuity of care.  Children's Colorado will be forced to dismantle programs and service lines it has taken years to build, and which cannot be easily rebuilt.

77.     The significant reduction in reimbursement to Children's Colorado resulting from the 2023 Final Rule will have a substantial negative impact on its operations and service to its current patient population not just at Children's Anschutz and/or Children's Colorado Springs, but across its entire system.  These TRICARE cuts will harm access to pediatric care for military families in Colorado Springs.

78.     As a result, Children's Colorado's patients and TRICARE beneficiaries will suffer harm by being forced to suddenly seek medical care sufficient to address their needs elsewhere. This care may not be available in their communities or even in Colorado.

79.     Pediatric patients would be irreparably harmed if forced to move unnecessarily and abruptly to a new living environment or halt treatment altogether, as such scenarios have real potential to cause emotional and physical distress as well as potential issues with continuity of care.

80.     Moreover, pediatric military dependents having to travel out of state to seek medically necessary care negatively impacts military personnel, and therefore, military readiness and impedes the DoD's overall goals.

81.     In addition to being the primary—or only—provider of some pediatric specialty services in the state of Colorado, Children's Colorado is also a major employer and taxpayer in Colorado and its various municipalities.  Closure of service lines or a reduction in operations of its children's hospitals and other facilities will cause many of those employees to lose their jobs and their benefits, including their health insurance, adding financial stress to their families, and would decrease local and state tax revenues.

## COUNT 1: THE CHALLENGED PROVISIONS ARE IN EXCESS OF STATUTORY AUTHORITY AND NOT IN ACCORDANCE WITH LAW (5 U.S.C § 706)

82.     The foregoing paragraphs are incorporated by reference.

83.     The FY02 NDAA unambiguously establishes the DoD's authority to set forth regulations that "provide that the amount [to be paid to a provider of services for services provided under a TRICARE plan]" and that such regulations must "provide that the amount of such payments shall be determined *to the extent practicable* in accordance with *the same*

*reimbursement rules* as apply to payments to *providers of services of the same type* under [Medicare]." 10 U.S.C. § 1079(i)(2) (emphasis added).

84.     By the DoD's own admission, it has chosen not to implement the Medicare reimbursement methodology for children's hospitals that provide outpatient services to TRICARE recipients, but rather to implement a pseudo-Medicare reimbursement methodology with substantive modifications, and to ignore the way Medicare actually applies reimbursement rules to children's hospitals.

85.     Indeed, the fact that the DoD must include modifications to children's hospital outpatient TRICARE reimbursement rules, compared to the rules applicable to Medicare, demonstrates a significant departure from the authority Congress promulgated to the DoD.

86.     By the DoD's own admission, it is not practicable to apply the *same reimbursement rules* under Medicare for children's hospital outpatient services furnished to TRICARE recipients, and therefore, the addition of children's hospitals to the Medicare OPPS under the 2023 Final Rule cannot be grounded upon 10 U.S.C. § 1079(i)(2) or any other statute.

87.     Accordingly, the challenged provisions are "in excess of statutory jurisdiction, authority, or limitations," 5 U.S.C. § 706(2)(C), and "not in accordance with law," *id.* § 706(2)(A).

**COUNT 2: THE CHALLENGED PROVISIONS ARE ARBITRARY AND CAPRICIOUS (5 U.S.C. §§ 553, 706)**

88.     The foregoing paragraphs are incorporated by reference.

89.     Even if the DoD had some authority to issue rules setting forth a TRICARE reimbursement methodology that supplements the statute's direction, and even if the challenged provisions of the 2023 Final Rule are not foreclosed by the statute, they are nonetheless unlawful because they are unreasonable and are not the product of reasoned decision-making the APA requires.

90.     The DoD entirely failed to consider an important aspect of the problem, did not consider all relevant evidence, and failed to articulate a satisfactory explanation for its actions and or offered an explanation that runs counter to the evidence before it when it included children's hospitals in the Medicare OPPS for purposes of TRICARE reimbursement for outpatient services, particularly as it relates to any changed circumstances from when TRICARE originally implemented the statutory requirements to move to the OPPS.

91.     In the 2023 Final Rule, the DoD acknowledges that children's hospitals "will have reduced TRICARE payments due to the rule's provisions" and notes, "[o]f the 35 [cancer and children's hospitals ("**CCHs**")] with the highest allowed amounts in 2021, *14 hospitals would have their payments reduced by more than 15 percent*. . . . The median hospital in this group of 35 CCHs *would have had its TRICARE reimbursement for the services covered by this rule reduced by two percent* had the rule been implemented in 2021."  88 Fed. Reg. 19,844, 19,846, 19,854 (emphasis added).  The DoD's only justification in response to this notable financial, operational, and access to care harm was that a children's hospital may apply for GTMCPA payments if it meets certain criteria.  Notwithstanding, the DoD offers no support showing that such payments will remediate the financial harm resulting from the payment reductions under the 2023 Final Rule.

92.     Moreover, the DoD did not even respond to the CHA Comment, and its only (cursory) response to the concerns of children's hospitals was to defer to GTMCPA payments, which are temporary, discretionary payments implemented entirely through sub-regulatory guidance; nor did the DoD respond in detail to other concerns raised by commenters to the 2023 Final Rule.

93.     The DoD has demonstrated little to no consideration of the effects that the 2023 Final Rule will have on military families, and children of service members, both in terms of the massive cuts in reimbursement and the practical impacts such as implementing new software and processes.

94.     Accordingly, the DoD did not meaningfully consider "the relevant matter presented," (5 U.S.C. § 553(c)), and the challenged provisions are "arbitrary, capricious, [and] an abuse of discretion." 5 U.S.C. § 706(2)(A).

## PRAYER FOR RELIEF

WHEREFORE, Children's Colorado prays for the following relief:

(a)     A declaration that the DoD acted unlawfully in promulgating the regulations at 32 C.F.R. § 199.14(a)(6)(ii), as they apply to children's hospitals, and the regulations are, therefore, invalid as to children's hospitals;

(b)     A declaration that the DoD promulgated the regulations at 32 C.F.R. § 199.14(a)(6)(ii), as they apply to children's hospitals, without observance of procedure required by law, and the regulations are, therefore, invalid as to children's hospitals;

(c)     An order vacating the following provisions of the 2023 Final Rule:

    i.   The words "and children's hospitals" in 32 C.FR. § 199.14(a)(6)(ii)(A);

    ii.   The words "and children's hospitals" in 32 C.F.R. § 199.14(a)(6)(ii)(E);

    iii.   The words "and children's hospitals" in 32 C.F.R. § 199.14(a)(6)(ii)(E)(3);

    iv.   The words "and children's hospitals" in 32 C.F.R. § 199.14(a)(6)(ii)(E)(4); and

    v.   Any other provision of the 2023 Final Rule that modifies TRICARE reimbursement to children's hospitals;

(d)     An injunction barring the DoD and the Secretary from enforcing the forgoing

provisions;

(e)     An award of attorney's fees and costs pursuant to 28 U.S.C. § 2412; and

(f)     Such other relief as this Court may deem just and proper.

   Dated: September 29, 2023.

                                   Respectfully submitted,


                                   /s/ *Richard M. Murray*
                                   Richard M. Murray
                                   POLSINELLI PC
                                   1401 Lawrence Street, Suite 2300
                                   Denver, Colorado 80202
                                   (303) 583-8242
                                   rmurray@polsinelli.com

                                   Jessica M. Andrade
                                   POLSINELLI PC
                                   100 2nd Avenue, Suite 3500
                                   Seattle, Washington 98104
                                   (206) 393-5422
                                   jandrade@polsinelli.com

                                   Joshua D. Arters
                                   POLSINELLI PC
                                   501 Commerce Street, Suite 1300
                                   Nashville, Tennessee 37203
                                   (615) 252-3923
                                   jarters@polsinelli.com

                                   *Counsel for Children's Hospital Colorado*