**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:23-cv-02561-REB

CHILDREN'S HOSPITAL COLORADO,

Plaintiff,

v.

UNITED STATES DEPARTMENT OF DEFENSE, and

LLOYD AUSTIN III, in his official capacity as Secretary
of Defense, United States Department of Defense,

Defendants.

---

**CHILDREN'S HOSPITAL COLORADO'S
MOTION FOR PRELIMINARY INJUNCTION**

---

Plaintiff, Children's Hospital Colorado ("Children's Colorado"), respectfully moves for a preliminary injunction, pursuant to Rule 65(a) of the Federal Rules of Civil Procedure, enjoining the implementation of a final rule issued by the United States Department of Defense ("DoD") in violation of its statutory authority and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq*. The DoD rule at issue establishes a new reimbursement methodology for the health care insurance program for uniformed service members and their dependents, known as TRICARE. The new rule establishes how TRICARE reimburses children's hospitals for outpatient hospital services furnished to the children of uniformed service members.

## CERTIFICATION

Pursuant to D.C. Colo. L. Civ. R. 7.1(a), Children's Colorado conferred with counsel for Defendants. On October 6, 2023, undersigned counsel participated in a telephone conference with counsel for DoD, Alexander W. Resar of the Department of Justice, wherein the parties discussed this motion and were advised that Defendants object to the relief requested.

## INTRODUCTION

Congress passed a series of laws "to create and maintain high morale in the uniformed services by providing an improved and uniform program of medical and dental care for members and certain former members of those services, and for their dependents." 10 U.S.C. § 1071. These laws, found at 10 U.S.C. Chapter 55 (hereinafter the "Military Health Act"), create a comprehensive managed health care program known as "TRICARE." Section 1079 of the Military Health Act directs DoD, as part of the TRICARE program, to enter into contracts for the provision of medical care for the children of uniformed service members. 10 U.S.C. § 1079(a). When entering into such contracts, Congress directed DoD to "assure that medical care is available for dependents . . . of members of the uniformed services." 10 U.S.C. § 1079(a). Then, as part of the National Defense Authorization Act of Fiscal Year 2002, Pub. Law 107-107 (Dec. 28, 2001) ("FY02 NDAA"), Congress required DoD to issue regulations "which provide that the amount of such payments ***shall*** be determined ***to the extent practicable in accordance with the same reimbursement rules*** as apply to payments to providers of services of the same

type **under title XVII of the Social Security Act [Medicare].**" 10 U.S.C. § 1079(i)(2) (emphasis added).

The primary reimbursement rules Medicare uses to determine payment for hospital outpatient care is the Medicare Outpatient Prospective Payment System ("Medicare OPPS"). Congress has long recognized, however, that Medicare OPPS, which was developed for over-65 beneficiaries, is impracticable for children's hospitals. For that reason, Congress determined that when children's hospitals are paid by Medicare, they will receive Medicare OPPS payments plus additional amounts. Those additional amounts, called hold harmless payments, are paid on a monthly basis to ensure that children's hospitals receive the same amount they would have been paid under Medicare's pre-OPPS program ("Medicare Hold Harmless Payment"). 42 U.S.C. § 1395l(t)(7)(D)(ii). Medicare has been reimbursing children's hospitals using Medicare OPPS **plus** the Medicare Hold Harmless Payment (hereinafter collectively the "Medicare Children's Hospital Rules") for over 20 years.

Over the two decades since the passage of the FY02 NDAA, wherein Congress directed that where practicable DoD shall implement the "same reimbursement rules" that apply to "providers of services of the same type" under Medicare, as practicable, DoD did not adopt the Medicare Children's Hospital Rules. In 2008, DoD issued a rule recognizing (as Congress had) that Medicare OPPS reimbursement alone was impracticable for children's hospitals, but also stating that it did not have the capacity to administer the Medicare Children's Hospital Rules—despite the fact that Medicare had been doing so since 2002.

Decades later, DoD inexplicably changed course in the final rule challenged in this action, which became effective on October 1, 2023. *See* TRICARE; Reimbursement of Ambulatory Surgery Centers and Outpatient Services Provided in Cancer and Children's Hospitals, 88 Fed. Reg. 19,844 (Apr. 4, 2023) ("2023 Final Rule").[1] Without any material change to the Medicare Children's Hospital Rules, any additional direction from Congress, or sufficient findings or explanation, the 2023 Final Rule adopts an entirely new, and wholly impracticable, reimbursement model for children's hospitals. The 2023 Final Rule is materially different from the Medicare Children's Hospital Rules and will cause irreparable harm to Children's Colorado and to access to medical care for the children of uniformed service members.

Children's Colorado is entitled to a preliminary injunction prohibiting the enforcement of the 2023 Final Rule as to children's hospitals. *First,* Children's Colorado is likely to succeed on the merits of its claim that the 2023 Final Rule is unlawful as applied to children's hospitals.  Congress directed DoD to "assure that medical care is available" and did not grant DoD authority to limit medical care for military dependents. Further, Congress has already determined that reimbursement under the Medicare Children's Hospital Rules is practicable and therefore under the authorizing statute, DoD "shall" implement that reimbursement methodology. The 2023 Final Rule therefore fails at *Chevron* step one. *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984). The 2023 Final Rule also fails at *Chevron* step two because it is

---

[1] While the 2023 Final Rule applies to ambulatory surgery centers, cancer hospitals, and children's hospitals, this action concerns only children's hospitals.

arbitrary and capricious. *See id.* In its rulemaking, DoD did not reasonably construe the provisions of the Military Health Act, failed to consider relevant data, failed to provide satisfactory explanations that reflected the evidence before it, and failed to consider important aspects of the problem.

*Second*, the 2023 Final Rule will cause Children's Colorado to suffer irreparable harm. The 2023 Final Rule's flawed reimbursement model will have a disastrous impact on both Children's Colorado and the pediatric patients it serves, and it will ultimately reduce military dependents' access to medical care—the very purpose of the Military Health Act.

*Third*, the balance of hardships and the public interest weigh strongly in favor of the injunctive relief Children's Colorado seeks.

Accordingly, as discussed more fully below, the Court should preliminarily enjoin enforcement of the 2023 Final Rule as to children's hospitals to preserve the *status quo* during the pendency of this litigation.

## **FACTS**

### I.      **Children's Colorado Serves a Disproportionate Volume of TRICARE Recipients.**

Children's Colorado is a Colorado not-for-profit health system that operates children's hospitals and other clinical locations, including locations in Colorado Springs, Colorado ("Children's Colorado Springs") and on the Anschutz Medical Campus in Aurora, Colorado ("Children's Anschutz"). (Declaration of Gregory Raymond, attached hereto as Exhibit A ("Raymond Decl.") at ¶ 3.)

Children's Colorado has a longstanding history of serving military families. (Raymond Decl. ¶¶ 5, 7-13.) Aurora is home to Buckley Space Force Base.  Colorado Springs has a significant concentration of military personnel including those affiliated with Fort Carson Army Base, the U.S. Air Force Academy, Cheyenne Mountain Air Force Base, Peterson Air Force Base, Schriever Air Force Base, and the U.S. Space Command. Children's Colorado is uniquely situated to serve military families stationed at these military installations. Indeed, TRICARE itself designated military installations near Children's Colorado Springs as Exceptional Family Member Program ("EFMP") hubs, because of the specialized pediatric services that Children's Colorado Springs provides. (Raymond Decl. ¶ 10.) These designations mean that military families who have a child with special health care needs are preferentially stationed near Children's Colorado Springs. In 2022, Children's Colorado Springs served nearly 10,000 children covered by TRICARE across 23,000 patient visits, and Children's Anschutz served nearly 7,000 children covered by TRICARE across almost 28,000 patient visits. (Raymond Decl. ¶ 13.)

## II.     The Military Health Act Sets Forth TRICARE Reimbursement Requirements.

Congress designed the TRICARE program to "to create and maintain high morale in the uniformed services by providing an improved and uniform program of medical and dental care for members and certain former members of those services, and for their dependents." 10 U.S.C. § 1071. With respect to its contracting with providers for the TRICARE program, Congress further directed DoD to "assure that medical care is available for [military] dependents." 10 U.S.C. § 1079(a). Against this backdrop, Congress

set forth instructions for how TRICARE must reimburse providers who deliver health care services to TRICARE recipients:

> The amount to be paid to a provider of services for services provided under a plan covered by this section shall be determined under joint regulations to be prescribed by the administering Secretaries which provide that the amount of such payments **shall** be determined **to the extent practicable** in accordance with **the same reimbursement rules** as apply to payments to **providers of services of the same type** under title XVIII [Medicare] of the Social Security Act (42 U.S.C. 1395 et seq.).

10 U.S.C. § 1079(i)(2) (emphasis added).

A previous version of this statute, passed in 1983, contained the same language but indicated that the payment rules "may" be determined under joint regulations. Department of Defense Authorization Act of 1984, Public Law 98-94 (Sept. 24, 1983). In other words, for forty years Congress has directed TRICARE to reference Medicare as a well-developed and appropriate model for provider reimbursement rules, and then in 2002 took that direction further making it mandatory for DoD to implement the same reimbursement rules as Medicare whenever practicable.

## III.    Medicare Has Developed Special Payment Rules for Children's Hospitals.

Medicare has long compensated children's hospitals differently than other hospitals. In 1997, Congress adopted Medicare OPPS. 1997 Balanced Budget Act of 1997, implemented at 65 Fed. Reg. 18,434 (Apr. 7, 2000). Medicare OPPS is a complicated reimbursement methodology whereby many items and services furnished in a hospital outpatient department are grouped together under various classifications, with each classification carrying a specific payment rate. 42 C.F.R. § 419.31. Medicare OPPS includes components that make application to children's hospitals impracticable.  For

7

example, Medicare OPPs includes metrics for MRIs to treat lower back pain and hospital visits following colonoscopies but does not include pediatric metrics. Consolidated Appropriations Act of 2000 (sec. 202), effective Jan. 1, 2000, codified at 42 U.S.C. § 1395(t)(7); 42 C.F.R. § 419.70(d)(3). In 2001, recognizing that Medicare OPPS would always be impracticable for children's hospitals, Congress made the transitional payment to children's hospitals permanent, characterizing it as a "hold harmless" payment. Consolidated Appropriations Act of 2001, sec. 405, codified at 42 U.S.C. § 1395l(t)(7)(D)(ii). These Medicare Hold Harmless Payments ensure that children's hospitals receive the same reimbursement they would have been paid prior to the enactment of Medicare OPPS.[2] 42 U.S.C. § 1395l(t)(7)(D); 42 C.F.R. § 419.70(d)(3); *see also* 73 Fed. Reg. 74,945, 74,949 (the purpose of the hold harmless payment was to ensure that hospitals are "pa[id] for services at the ***full amount that would have been allowed prior to implementation of the OPPS***.") (emphasis added). The combination of the base Medicare OPPS reimbursement and Medicare Hold Harmless Payments constitute the Medicare Children's Hospital Rules, which have remained unchanged since 2002.

## IV.   DoD Has Failed to Adopt Medicare Children's Hospital Rules.

Starting in 2002, DoD considered Congress's directive to utilize Medicare reimbursement rules for providers of the same type "to the extent practicable" and determined that adopting Medicare Children's Hospital Rules was impracticable because

---

[2] The amount of the monthly hold harmless payment is calculated by multiplying the children's hospital's costs by the hospital's "payment-to-cost ratio." 42 U.S.C. § 1395l(t)(7)(F).

unlike Medicare, it was unable to determine how to compensate children's hospitals at pre-Medicare OPPS rates and thus could not calculate the Medicare Hold Harmless Payment. *See* 67 Fed. Reg. 40,597, 40,601; 70 Fed. Reg. 61,368, 61,371; 73 Fed. Reg. 74,945, 74,948-49. In 2008, DoD decided to "totally exempt" children's hospitals from any conversion to Medicare OPPS, "given the administrative complexity of capturing the data required for payment of monthly [Medicare Hold Harmless Payment] amounts." During the same time, Medicare (and Congress) also recognized that Medicare OPPS alone was impracticable for children's hospitals but was able to implement the Medicare Children's Hospital Rules as a practicable system of reimbursement for children's hospitals. In none of these rulemakings did DoD explain why Medicare could effectuate the Congressionally directed Medicare Children's Hospital Rules, but DoD could not.

## V.    The 2019 Proposed Rule Dramatically Changed Course.

In a proposed rule[3] (which was ultimately made final) issued in late 2019 ("2019 Proposed Rule"), without any material change to the Medicare Children's Hospital Rules—and nearly twenty years after the enactment of the FY02 NDAA—DoD proposed a dramatic departure from prior rulemaking. In the 2019 Proposed Rule, DoD proposed to adopt a "combined OPPS and cost-reimbursement system" under which children's hospitals would be paid using a Medicare-OPPS-based structure and additional payments to cover what DoD asserted was actual "costs" based on the hospital's Medicare Cost Report cost-to-charge ratio ("CCR") ("TRICARE Costs Payment"). 84 Fed.

---

[3] TRICARE; Reimbursement of Ambulatory Surgery Centers and Outpatient Services Provided in Cancer and Children's Hospitals, 84 Fed. Reg. 65,718 (Nov. 29, 2019).

Reg. 65,718, 65,723. Further, DoD proposed that the TRICARE Costs Payments be made **annually**, not monthly like the Medicare Hold Harmless Payments under Medicare Children's Hospital Rules.

Critically, DoD's 2019 Proposed Rule identified "costs" based upon a Medicare Cost Report submitted by a children's hospital, which guarantees children's hospitals will be compensated far **less** than the actual cost of care. The Medicare Cost Report, developed to identify overhead costs to care for beneficiaries over the age of 65, defines many costs of pediatric care as "unallowable." As a result, many of the costs incurred by Children's Colorado are not reflected in the Medicare Cost Report resulting in a TRICARE Costs Payment that does not accurately reflect the actual cost of care. *See* 42 C.F.R. §§ 413.1-157; Medicare Provider Reimbursement Manual, Ch. 21, § 2104. Children's Colorado incurred approximately $142 million of hospital operating costs in 2020 that could not be reported on the Medicare Cost Report and therefore would not result a TRICARE Costs Payment. (Declaration of Jeff Harrington, attached hereto as Exhibit B ("Harrington Decl.") at ¶¶ 13-14.) While DoD proposed that children's hospitals may be eligible for an additional payment, known as General Temporary Military Contingency Payment Adjustments ("Military Contingency Payment"), 84 Fed. Reg. 65,718, 65,724, that payment is discretionary, still does not reflect actual costs, and is not tied at all to the Medicare Children's Hospital Rule Congress directed DoD to follow when practicable.

**VI.    Comments to the 2019 Proposed Rule Raised Significant Problems.**

The 2019 Proposed Rule was opened for a 60-day public comment period. Children's Colorado collaborated with the Children's Hospital Association ("CHA") to

submit a single comprehensive comment. (*See* Compl. at Ex. A, ECF No. 1-1 ("CHA Comment").) The CHA Comment emphasized that most children's hospitals do not have software, systems, or specialized staff trained to make computations or submit claims for Medicare OPPS. (*Id.*) Additionally, the CHA Comment requested more detail regarding TRICARE's reimbursement methodology and expressed concerns that DoD was not accurately capturing the significant financial impact that the 2019 Proposed Rule would have on children's hospitals and the communities they serve. (*Id.*)

Another children's hospital located in Norfolk, Virginia near a number of military installations, Children's Hospital of The King's Daughters ("CHKD"), wrote individually to describe how devastating the 2019 Proposed Rule would be on children's hospitals serving a disproportionate amount of TRICARE patients. (*See* Compl. at Ex. B, ECF No. 1-2 ("CHKD Comment").) The CHKD Comment, like the CHA Comment, emphasized that DoD was likely significantly underestimating the 2019 Proposed Rule's impact on children's hospitals. (*Id.*) CHKD also pointed out that children's hospitals do not have the same payor mixes as general acute care hospitals—instead, children's hospitals typically have a large Medicaid volume resulting in significant below cost reimbursement, and the 2019 Proposed Rule's reduction in TRICARE reimbursement would likely decrease access to care for TRICARE patient populations. (*Id.*)

## VII.   The 2023 Final Rule Made the 2019 Proposed Rule Final.

On April 4, 2023, DoD's 2023 Final Rule adopted most of the 2019 Proposed Rule with an effective date of October 1, 2023. 88 Fed. Reg. 19,844. Like the 2019 Proposed Rule, the 2023 Final Rule's reimbursement methodology differs from the Medicare

Children's Hospital Rules in three critical ways. *First*, the 2023 Final Rule uses Medicare-OPPS, which Congress, Medicare, and DoD have repeatedly found to be impracticable, but does not add the Medicare Hold Harmless Payment, which is the component that makes the Medicare Children's Hospital Rules a practicable system of reimbursement for children's hospitals. Instead, DoD has adopted the TRICARE Costs Payment, which compensates children's hospitals for less than their actual "costs" and less than they receive with the Medicare Hold Harmless Payment. 32 C.F.R. § 199.14(a)(6)(ii)(E)(4). *Second*, under the 2023 Final Rule, the TRICARE Costs Payment is paid on an annual basis, not monthly like the Medicare Hold Harmless Payment. 32 C.F.R. § 199.14(a)(1)(iii)(E)(4). *Third*, the 2023 Final Rule includes the possibility of a Military Contingency Payment, under which a children's hospital might—at the discretion of the Secretary—receive an additional payment. Even with this additional Military Contingency Payment, children's hospitals still will not be reimbursed for their actual costs or at the rate provided by the Medicare Children's Hospital Rules. 32 C.F.R. § 199.14(a)(b)(ii)(E)(3).

**VIII.   The 2023 Final Rule will Irreparably Harm Children's Colorado.**

DoD anticipates a $35 million loss nationwide across all cancer and children's hospitals as a result of the 2023 Final Rule. *See* 88 Fed. Reg. 19,844, 19,849. DoD has informed Children's Colorado that it expects Children's Colorado Springs to lose $9.6 million per year and Children's Anschutz to lose $1.8 million per year, a total of $11.4 million per year which is nearly one-third of the anticipated nationwide loss. (Harrington Decl. ¶ 17.) Children's Colorado's own projections indicate that it will lose between

$12,858,925 to $17,440,468 system-wide, depending upon whether it receives the additional Military Contingency Payment—which DoD has already indicated will not be paid to Children's Anschutz. (*Id.* ¶¶18, 25.) Children's Colorado also expects many claims to be rejected due to issues it will face with TRICARE's new billing system, which will add to its financial and administrative burdens. (*Id.* ¶ 16.)

Even DoD's smallest estimated cut for Children's Colorado—DoD's unexplained calculation of $11.4 million—would result in significant and imminent changes to Children's Colorado's ability to furnish medical care that could not be easily reversed. (Raymond Decl. ¶¶ 15-16, 36.) Children's Colorado would have to, within months, reduce staff, reduce services, and "dismantle entire programs and service lines that provide pediatric care to children in Colorado." (*Id.* ¶ 15.) The bulk of these reductions would have to occur at Children's Colorado Springs, where most TRICARE beneficiaries receive medical care. (*Id.*)

For example, Children's Colorado Springs, which is located in a community that is already lacking sufficient emergency pediatric care, will need to reduce emergency department staffing and begin diverting patients who present to its emergency department and do not meet the criteria for a medical emergency. (*Id.* ¶¶ 18-19.)

Children's Colorado Springs' Center for Cancer and Blood Disorders and Infusion Center will both have to be closed. (*Id.* ¶¶ 20-23.) These centers provide critically needed care and chemotherapy to pediatric patients facing a wide range of cancers and non-malignant blood disorders. (*Id.* ¶¶ 20, 22.) The closure of these programs will require patients to travel over 75 miles to Children's Anschutz or out of state. (*Id.* ¶¶ 21-22.) These

closures will also cause a loss of pediatric critical care providers that cannot be easily (and certainly not quickly) reversed were Children's Colorado to regain sufficient reimbursement at some unknown point in the future. (*Id.* ¶¶ 21, 23.)

Children's Colorado Springs' neonatal intensive care unit ("NICU") will also be forced to downgrade from a Level III to a Level II NICU. (*Id.* ¶ 25). This means that Children's Colorado Springs' NICU will no longer have the capability to care for neonatal patients born at less than 32 weeks or who are medically or surgically complex. (*Id.*) These premature infants will have to travel to other NICUs at a time when travel is high risk and not recommended. (*Id.*)

TRICARE cuts will also require decreasing the number of clinicians at Children's Colorado Springs and, as a result, its state trauma designation will likely be downgraded. (*Id.* ¶ 29.) Colorado Springs will then lose pediatric trauma expertise, and pediatric trauma patients presently cared for at Children's Colorado Springs will need to be shifted to adult programs or transported to Children's Anschutz or out of state. (*Id.*)

A number of other programs and services will also be impacted, including high altitude sleep studies, behavioral health, epilepsy monitoring, audiology examinations, child life specialists, and school based mental health programs. (*Id.* ¶¶ 30-35.) Children's Colorado will have to start making these cuts within the next three months, as the losses from TRICARE's new reimbursement rules are imposed. (*Id.* ¶ 36.) These losses cannot be easily reversed and would require years of rebuilding and rehiring.

## LEGAL STANDARDS

Children's Colorado is entitled to a preliminary injunction if it proves: "(1) that there is a substantial likelihood that [it] will prevail on the merits; (2) that [it] will suffer irreparable harm unless the preliminary injunction is issued; (3) that the threatened injury to [Children's Colorado] outweighs the harm the preliminary injunction might cause defendants; and (4) that the preliminary injunction is in the public interest."[4] *Colorado Christian Univ. v. Sebelius*, 51 F. Supp. 3d 1052, 1059 (D. Colo. 2014) (citing *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1246 (10th Cir. 2001)). The "fundamental purpose" of a preliminary injunction is to preserve the *status quo* during the pendency of the litigation. *Bray v. QFA Royalties, LLC*, 486 F. Supp. 2d 1237, 1243-44 (D. Colo. 2007).

As discussed more fully below, Children's Colorado has met its burden to establish its entitlement to a preliminary injunction.

## ARGUMENT

### I.    Children's Colorado is Likely to Prevail on the Merits.

Judicial review of agency action is governed by § 706 of the APA, requiring the reviewing court to engage in a "substantial inquiry." *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1573-74 (10th Cir. 1994) (citing *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402 (1971), *abrogated on other grounds*, 430 U.S. 99, 105). Under the APA, courts will "hold unlawful and set aside" agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), or

---

[4] Where the Government is the non-moving party, the final two factors merge. *Denver Homeless Out Loud v. Denver*, 32 F.4th 1259, 1278 (10th Cir. 2022).

"in excess of statutory jurisdiction, authority, or limitations," *id.* § 706(2)(C). Thus, "the essential function of judicial review is a determination of (1) whether the agency acted within the scope of its authority, (2) whether the agency complied with prescribed procedures, and (3) whether the action is otherwise arbitrary, capricious or an abuse of discretion." *Olenhouse*, 42 F.3d at 1573-74.

Courts review an agency's statutory interpretation under the two-step framework promulgated by *Chevron*. The first step determines "whether Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 843. The second step, which applies to ambiguous sections of a statute, asks "whether the agency's construction is 'permissible.'" *Maralex Res., Inc. v. Barnhardt*, 913 F.3d 1189, 1198-99 (10th Cir. 2019) (*quoting Chevron*, 467 U.S. at 843). Under step two, courts must defer to an agency's construction of a statute so long as it "reflects a plausible construction of the plain language of the statute and does not otherwise conflict with Congress' expressed intent." *Rust v. Sullivan*, 500 U.S. 173, 184 (1991), *abrogated on other grounds*, 505 U.S. 833.

However, *Chevron* "is not a wand by which courts can turn an unlawful frog into a legitimate prince." *Assoc. Gas Distrib. v. F.E.R.C.*, 824 F.2d 981, 1001 (D.C. Cir. 1987). Indeed, federal administrative agencies must engage in "reasoned decisionmaking." *Allentown Mack Sales & Serv., Inc. v. N.L.R.B.*, 522 U.S. 359, 374 (1998) (citations omitted). This means that "[n]ot only must an agency's decreed result be within the scope

of its lawful authority, but the process by which it reaches that result must be logical and rational." *Id.* More specifically, "the agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Veh. Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (*quoting Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)). Agency action must also be set aside if the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.*

### A. The 2023 Final Rule is in Excess of Statutory Authority.

#### 1. The 2023 Final Rule is Contrary to Congress' Directive to Provide Access to Care to Military Dependents.

Under the first step of the *Chevron* analysis, Congress has spoken to the issues of this case. First, Congress stated that its purpose when enacting the Military Health Act was "to create and maintain high morale in the uniformed services by providing an improved and uniformed program of medical and dental care for members and certain former members of those service and for their dependents." 10 U.S.C. § 1071. Then, in the particular section of the Military Health Act at issue here, Section 1079, Congress stated that its purpose was to "assure that medical care is available for dependents . . . of members of the uniformed services." 10 U.S.C. § 1079(a). To effectuate that purpose, Congress directed DoD to determine TRICARE payments in accordance with the "***same reimbursement rules***" that apply to "***providers of services of the same type***" under

Medicare, to the extent it was "***practicable***" to do so. 10 U.S.C. § 1079(i)(2) (emphasis added).

Under these provisions, DoD has no authority to adopt payment rules that limit access to medical care for military dependents. According to the plain meaning of these terms, and read "harmonious[ly]" with the purposes of the Military Health Act, (*Loughridge v. Goodyear Tire and Rubber Co.*, 207 F. Supp. 2d 1187, 1190 (D. Colo. 2002)), DoD may stray from application of Medicare Children's Hospital Rules ***only*** if doing so would successfully, feasibly, and effectively accomplish the purpose of the statute: to "assure that medical care is available for [military] dependents." 10 U.S.C. § 1079(a). The TRICARE payments instituted by the 2023 Final Rule strayed far from the Medicare Children's Hospital Rules and do not assure that medical care is available for military dependents. Instead, the 2023 Final Rule determines payment for children's hospitals at less than the amount they would receive under the Medicare Children's Hospital Rules, less than their actual costs of providing care, and at amounts that will assure the ***loss*** of medical care for military dependents. (*See generally* Raymond Decl.; *see also* Compl. at Ex. B, ECF No. 1-2 (CHKD Comment).) This alone renders the 2023 Final Rule invalid as outside of DoD's statutory authority.

Congress intended to "assure that medical care is available for [military] dependents." 10 U.S.C. § 1079(a). Thus, there is only one way to harmonize any discretion provided to DoD with this intent:  DoD is required to implement a reimbursement method that assures access to medical care for military dependents in children's hospitals. The disastrous impact of the 2023 Final Rule plainly indicates that "[i]t is

implausible that Congress meant the [Military Health Act] to operate in this manner," and the Court should interpret the authority promulgated to DoD in a manner that "avoid[s] the type of calamitous result that Congress plainly meant to avoid." *See King v. Burwell*, 576 U.S. 473, 494, 498 (2015).

### 2.   The 2023 Final Rule is Contrary to Congress' Directive on how Children's Hospitals Can Practicably be Reimbursed.

Further, Congress has spoken on whether the reimbursement system used by Medicare is practicable, such that DoD had no discretion to deviate from the Medicare Children's Hospital Reimbursement Rules. Recognizing that Medicare OPPS reimbursement alone was unreasonable and impracticable for children's hospitals, Congress ultimately chose to also pay children's hospitals the monthly Medicare Hold Harmless Payments. 42 U.S.C. § 1395l(t)(7)(D)(ii). This is a permanent fixture of the Medicare program. *Id.* Thus, the Medicare Children's Hospital Rules include the base Medicare OPPS payment ***plus*** the Medicare Hold Harmless Payments, and together those payments ensure that children's hospitals receive the same reimbursement they received prior to the enactment of Medicare OPPS. 42 U.S.C. § 1395l(t)(7)(D); 42 C.F.R. § 419.70(d)(3); *see also* 73 Fed. Reg. 74,945, 74,949. Because Congress has already spoken on this issue and made clear that the Medicare Children's Hospital Rules are practicable, DoD had no discretion to deviate from this reimbursement system. Consequently its 2023 Final Rule is outside DoD's authority.

**B.      The 2023 Final Rule is Arbitrary, Capricious, and an Abuse of Discretion.**

Even if the 2023 Final Rule, as applied to children's hospitals, is not expressly foreclosed by the Military Health Act and the FY02 NDAA, it is still unlawful because it does not reasonably construe those statutes, does not effectuate Congress's intent, and is arbitrary and capricious. *Seminole Nursing Home, Inc. v. Comm'r of Internal Rev.*, 12 F.4th 1150, 1156 (10th Cir. 2021); *Hays Med. Ctr. v. Azar*, 956 F.3d 1247, 1264 n.18 (10th Cir. 2020).

**1.   DoD Did Not Explain Why it Was Not Practicable to Apply the Medicare Children's Hospital Rules to TRICARE.**

In the 2023 Final Rule, DoD stated in a conclusory fashion that it "now has the capability, and it is feasible" to adopt "the Medicare methodology for reimbursement of outpatient facility services rendered in a . . . children's hospital, ***with modifications*** to address the administrative burden and complexity that initially led the agency to exclude [children's hospitals] from OPPS." 88 Fed. Reg. 19,844, 19,848 (emphasis added). These modifications were the TRICARE Costs Payment and Military Contingency Payment which: (1) compensate children's hospitals for far less than the Medicare Children's Hospital Rules; and (2) are paid annually, not monthly like the Medicare Hold Harmless Payment. These changes represent a significant deviation from the Medicare Children's Hospital Rules. Other than its passing reference to "administrative burden[s] and complexit[ies]," DoD did not attempt to explain—let alone reasonably explain—its conclusion that it was not practicable for TRICARE to pay children's hospitals using the same reimbursement rules and at the same frequency as Medicare has done for over

twenty years. Further, its conclusory and unsupported statement about why it deviated from the Medicare Children's Hospital Rules is evidence that DoD gave no meaningful consideration of this issue at all. Both the lack of an explanation and the lack of consideration makes DoD's adoption of the 2023 Final Rule arbitrary and capricious. *Olenhouse*, 42 F.3d at 1575; *Wages & White Lion Invs., LLC v. FDA*, 16 F.4th 1130, 1137 (5th Cir. 2021) (rejecting agency explanation as "conclusory, unsupported, and thus wholly insufficient.").

Worse still, DoD inexplicably focused upon only DoD's own administrative ability to implement the Medicare Children's Hospital Rules. That is, DoD focused exclusively on what it believed was administratively possible for itself. The implementing statute requires DoD to use the Medicare Children's Hospital Rules if they are "practicable." As other courts that have considered the issue of "practicality" have already found, "the term [practicable] does not simply equate to 'possible.'" *Nat'l Wildlife Fed'n v. Norton*, 306 F. Supp. 2d 920, 927, n.12 (E.D. Cal. 2004). Thus, DoD's conclusion that its reimbursement plan is possible fails to satisfy its obligation to reasonably consider whether the Medicare Children's Hospital Rules are "practicable." The requirement that DoD implement a rule that is practicable necessarily makes it arbitrary and capricious for DoD to fail to consider practicality—which is exactly what DoD did here.

Specifically, DoD failed to consider whether its rule: (1) was feasible and effective for children's hospitals in the context of hospital outpatient services; and (2) effectuated Congress's intent to "assure that medical care is available for [military] dependents." 10 U.S.C. § 1079(a). Indeed, DoD failed to consider the financial impact on children's

21

hospitals and whether the 2023 Final Rule's reimbursement methodology would "assure that medical care is available for [TRICARE] dependents." 10 U.S.C. § 1079(a). This failure alone dooms DoD's determination. *See Dept. of Homeland Security v. Regents of the Univ. of Cal.*, 140 S.Ct. 1891, 1913 (2020) (holding that an agency's complete failure to consider an important aspect of the issue rendered its decision arbitrary and capricious alone); *New Mexico ex rel. Richardson v. Bureau of Land Mgmt.*, 565 F.3d 683, 704 (10th Cir. 2009) (citing *Utah Envtl. Cong. v. Troyer*, 479 F.3d 1269, 1280 (10th Cir. 2007) (an agency's decision may be arbitrary and capricious where it entirely fails to consider an important aspect of the problem)); *see also Wages*, 16 F.4th at 1138 (holding that "omission" of discussion of a relevant factor "alone likely renders [agency] decision arbitrary and capricious.").

While DoD acknowledged—passingly—the issue of reduced TRICARE payments to children's hospitals, it failed to grapple with the impact of that reduction other than to point to the Military Contingency Payment as an additional amount that might lessen the impact of the reduction. This response does not demonstrate adequate consideration of this problem: Given the financial impact, will children of military personnel be able to access the medical care they need?   Consequently, DoD's decision is arbitrary and capricious.

### 2. The 2023 Final Rule Does Not Ensure Children's Hospitals Are Reimbursed Their Costs.

As explained above, Congress directed DoD to implement reimbursement rules that assure medical care is available for dependents. In effort to comply with that mandate, DoD emphasized that it intended to adopt rules for TRICARE that would ensure

that children's hospitals would "not be reimbursed less than their costs." *See, e.g.*, 84 Fed. Reg. 19,844, 19,847 ("the provider is not reimbursed less than their costs"); 19,848 (Children's hospitals "will receive, at a minimum, one hundred percent of their costs"); 19,853 ("This modification still holds the hospital harmless and ensures payment at costs"); 19,853 ("through annual adjustments, providers are ***assured that they will receive reimbursement for their costs***.") (emphasis added).

But the 2023 Final Rule ***does not*** reimburse children's hospitals for their actual costs. As explained above, the purported "cost" adjustment contemplated in the 2023 Final Rule is calculated using the Medicare Cost Report that is not designed to, and does not, adequately measure the actual costs incurred by children's hospitals. As described above, many of children's hospital's true costs are not reported on the Medicare Cost Report. *See* 42 C.F.R. §§ 413.1-157; Medicare Provider Reimbursement Manual, Ch. 21, § 2104. For Children's Colorado alone, approximately $142 million in hospital operating costs were "unallowable" on its Medicare Cost Report. (Harrington Decl. ¶ 12.)

Accordingly, the very foundation of DoD's rulemaking—that children's hospitals can be "assured that they will be reimbursed for their costs"—is not correct and illustrates DoD's lack of reasoned consideration of the issue. *Bethesda Health, Inc. v. Azar*, 389 F. Supp. 3d 32, 41 (D.D.C. 2019) (courts set aside as arbitrary and capricious agency action that "contradicts that agency's own regulations.") (citations omitted). This also illustrates DoD's failure to show a rational connection between the facts found (that children's hospitals must be compensated in a manner that allows them to provide access to care) and the choice made (implementing a rule that does not reimburse children's hospitals

for the actual costs of pediatric care). *Am. Great Lake Ports Assn. v. United States Coast Guard*, 443 F. Supp. 3d 44, 52 (D.D.C. 2020).

### 3. DoD Failed to Respond to Comments and Contradicted Itself in Rulemaking.

Although DoD "need not address every comment" made during the notice and comment period, "it must respond in a reasoned manner to those that raise significant problems." *City of Waukesha v. EPA*, 320 F.3d 228, 257 (D.C. Cir. 2003) (*quoting Reytblatt v. Nuclear Reg. Comm'n*, 105 F.3d 715, 722 (D.C. Cir. 1997)). The agency's response to public comments must at least "enable [the Court] to see what major issues of policy were ventilated . . . and why the agency reacted to them as it did." *Auto. Parts & Accessories Ass'n v. Boyd*, 407 F.2d 330, 338 (D.C. Cir. 1968). Furthermore, agencies must respond to comments that "raise points relevant to the agency's decision and . . . if adopted, would require a change in an agency's proposed rule.'" *FBME Bank Ltd. v. Lew*, 209 F. Supp. 3d 299, 333 (D.D.C. 2016) (*quoting City of Portland v. E.P.A.*, 507 F.3d 706, 715 (D.C. Cir. 2017)). With respect to proposed alternatives, "[a]n agency is required 'to consider responsible alternatives to its chosen policy and to give a reasoned explanation for its rejection of such alternatives.'" *Am. Radio Relay League, Inc. v. F.C.C.*, 524 F.3d 227, 242 (D.C. Cir. 2008) (*quoting City of Brookings Mun. Tel. Co. v. F.C.C.*, 822 F.2d 1153, 1169 (D.C. Cir. 1987)).

DoD's response to public comments on the application of the 2023 Final Rule to children's hospitals does not satisfy these standards. Both the CHA and CHKD Comments raised concerns related to access to care, and the CHKD Comment in particular proposed two alternative solutions: (1) exempting children's hospitals from the

2023 Final Rule, resulting in children's hospitals being reimbursed under TRICARE at the same levels; or (2) grandfathering certain children's hospitals that are in close proximity to military bases and consequently treat a disproportionate share of TRICARE beneficiaries. (Compl. at Exs. A, B, ECF Nos. 1-1, 1-2.) But DoD neither meaningfully grappled with these concerns nor addressed the proposed solutions. This critical failure runs afoul of the APA. *City of Waukesha*, 320 F.3d at 257; *Am. Radio Relay League*, 524 F.3d at 242 ("An agency is required 'to consider responsible alternatives to its chosen policy and to give a reasoned explanation for its rejection of such alternatives.'") (*quoting City of Brookings*, 822 F.2d at 1169). At a minimum, the fact that DoD failed to respond to comments and proposed alternatives is itself adequate to support a conclusion that the 2023 Final Rule must be remanded to DoD for a more adequate explanation. *Am. Coll. of Emergency Physicians v. Price*, 264 F. Supp. 3d 89, 96 (D.D.C. 2017).

Moreover, DoD's abrupt change in the 2023 Final Rule dramatically departs from its reasoning from the last two decades that TRICARE's adoption of Medicare OPPS without the addition of the Medicare Hold Harmless Payment was impracticable for children's hospitals. Without any meaningful changes to Medicare OPPS, DoD has now decided to "revisit" this decision and has concluded without any meaningful explanation that it is, in fact, practicable to apply its form of Medicare OPPS to TRICARE reimbursement for children's hospitals.

DoD's inconsistent reasoning itself supports a finding that DoD failed to adhere to the APA's reasoned decision-making requirements because unexplained inconsistency and illogical and shifting policies are "a reason for holding an interpretation to be an

arbitrary and capricious change from agency practice." *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 222 (2016); *see also Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 417 (1993) (explaining that "the consistency of an agency's position is a factor in assessing the weight that position is due"); *I.N.S. v. Cardoza–Fonseca*, 480 U.S. 421, 446 n.30 (1987) ("An agency interpretation of a relevant provision which conflicts with the agency's earlier interpretation is 'entitled to considerably less deference' than a consistently held agency view.") (*quoting Watt v. Alaska*, 451 U.S. 259, 273 (1981)); *State Farm*, 463 U.S. at 42 (while an agency may "adapt rules and policies to the demands of changing circumstances," where Congress has "established a presumption from which judicial review should start," that presumption is "*against* changes in current policy that are not justified by the rulemaking record").

## II. Children's Colorado, Patients, and the Public at Large Will Suffer Irreparable Harm.

To demonstrate irreparable harm, a party "seeking preliminary relief [must] demonstrate that irreparable injury is likely in the absence of an injunction." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). The movant must show "a significant risk that he or she will experience harm that cannot be compensated after the fact by monetary damages." *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009) (*quoting Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1258 (10th Cir. 2003)). Although economic loss alone is generally insufficient, "imposition of money damages that cannot later be recovered for reasons such as sovereign immunity constitutes irreparable injury." *Crow & Dunleavy, P.C. v. Stidham*, 640 F.3d 1140, 1157 (10th Cir. 2011) (cleaned up). Where, as here, a plaintiff cannot recover damages from the defendant due to the

defendant's sovereign immunity, any economic loss suffered by a plaintiff is irreparable *per se. See, e.g.*, *Kansas Health Care Ass'n, Inc. v. Kansas Dep't of Soc. and Rehab. Servs.*, 31 F.3d 1536, 1543 (10th Cir. 1994). Furthermore, "complying with a regulation later held invalid almost always produces the irreparable harm of nonrecoverable compliance costs." *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 220-21 (1994) (Scalia, J., concurring in part).

The 2023 Final Rule will cause Children's Colorado to suffer irreparable harm. As discussed above and in the Declaration of Jeff Harrington, the 2023 Final Rule will result in a financial calamity at Children's Colorado. Based on the projected losses flowing from the implementation of the 2023 Final Rule, Children's Colorado expects to operate at a loss system-wide and will thus have to cut programs and services impacting not only the dependents of military service members, but also impacting the community as a whole. Ultimately, access to specialized pediatric care in Colorado Springs specifically, where the majority of TRICARE's beneficiaries in the area reside, will be reduced—directly contradicting the purpose of the FY02 NDAA and the Military Health Act.

Moreover, the irreparable harm is even more pronounced here where access to, and the quality of, medical care furnished to children is at risk. The impact of the 2023 Final Rule's TRICARE payments includes the loss of staff, reduced services, and the dismantling of entire programs and service lines that cannot be easily reversed even if Children's Colorado Springs is later reimbursed at sufficient levels.

**III.    The Balance of Harms and the Public Interest Weigh in Favor of Relief.**

The balance of harms weighs in favor of the injunction requested by Children's Colorado because halting implementation of the 2023 Final Rule will preserve the *status quo* and allow DoD to continue utilizing the same reimbursement rules it has for children's hospitals since the FY02 NDAA originally went into effect. *RoDa Drilling Co.*, 552 F.3d at 1208 (favoring injunctions that preserve the status quo). Given the over twenty-year delay in DoD's attempt to change TRICARE payments to children's hospitals for outpatient services, DoD simply cannot argue there is any urgency to implement the 2023 Final Rule. Furthermore, it is beyond reasonable dispute that Children's Colorado will suffer significant, imminent, and irreparable harm. *Sebelius*, 51 F. Supp. 3d at 1064 ("When considering the balance of harms, a court must balance 'the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'") (*quoting Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542 (1987)); *Pelletier v. United States*, 11-CF-01377-WJM-CBS, 2011 WL 2077828, at *4 (D. Colo. May 25, 2011).

<u>**CONCLUSION**</u>

WHEREFORE, the Court should enter a preliminary injunction that halts the application of the 2023 Final Rule as to children's hospitals and preserves the *status quo*.

Dated: October 12, 2023.

Respectfully submitted,


/s/ *Stacy Carpenter*
Stacy Carpenter
Richard M. Murray
POLSINELLI PC
1401 Lawrence Street, Suite 2300
Denver, Colorado 80202
(303) 583-8242
scarpenter@polsinelli.com
rmurray@polsinelli.com

Jessica M. Andrade
POLSINELLI PC
100 2nd Avenue, Suite 3500
Seattle, Washington 98104
(206) 393-5422
jandrade@polsinelli.com

Joshua D. Arters
POLSINELLI PC
501 Commerce Street, Suite 1300
Nashville, Tennessee 37203
(615) 252-3923
jarters@polsinelli.com

*Counsel for Children's Hospital Colorado*

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document has been sent to the following on this the 12th day of October, 2023:

*Via U.S. Mail:*

United States Department of Defense
1000 Defense Pentagon
Washington, DC 20301-1000

Lloyd Austin III
Secretary of Defense
United States Department of Defense
1000 Defense Pentagon
Washington, DC 20301-1000

*Via Email:*

Alexander W. Resar
U.S. Department of Justice
Civil Division, Federal Programs Bench
202-616-8188
Alexander.W.Resar@usdoj.gov

*Counsel for Defendants*

/s/ *Joshua D. Arters*